UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS BOUCHARD and<br>CHANTELLE BOYD,<br><br>Defendants<br><br>**SEALED** | Criminal No. 20CR10080<br><br>Violations:<br><br>Count One: Conspiracy to Steal Government Funds<br>(18 U.S.C. § 371)<br><br>Counts Two - Eleven: Theft of Government Funds; Aiding and Abetting<br>(18 U.S.C. §§ 641 and 2)<br><br>Count Twelve: False Statements to a Grand Jury<br>(18 U.S.C. § 1623 (a))<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.      THOMAS BOUCHARD ("BOUCHARD") was a resident of Uxbridge, Massachusetts.

2.      CHANTELLE BOYD ("BOYD") was a resident of Hagerstown, Maryland. BOYD was

an employee of the Courtyard Marriot Hotel in Ft. Detrick, Maryland from 2002 through 2014.

3.      The Natick Contracting Division ("NCD"), headquartered at the United States Army

Natick Soldier Systems Center ("NSSC") in Natick, Massachusetts, is part of the Department of

Defense ("DOD") and a full service government contracting organization managing integrated

acquisition from research and development through production and post production services.

NCD personnel prepare and issue contract solicitations, evaluate proposals, perform cost/price analysis, negotiate contract terms and modifications, monitor contractor performance as it relates to the awarded contract, and make contract awards binding the Department of Defense to a contract. As part of the United States Army Contracting Command, NCD's expertise is utilized by all of the Armed Services. In particular, NCD provides contracting services to key Program Executive Offices and Program Managers supporting the U.S. Army's major acquisition programs. Additionally, NCD also provides contracting services to other DOD agencies, including the Navy, Air Force, Marines, and "Joint" DOD programs which are funded and managed by all the branches of the Armed Services.

4.      NCD had satellite offices in Milford, Massachusetts and Orlando, Florida and is responsible for overseeing additional contract support of activities located in Aberdeen, Maryland and San Diego, California.

5.      BOUCHARD, an Army civilian employee, was the Chief of the NCD until April 2018. BOUCHARD began working at the NCD in May 1998 as a Contracting Officer ("KO"). He then served as the Deputy Chief of NCD from 2006 through January 2016, when he was then promoted to Chief.

6.      Evolution Enterprises, Inc. ("EEI") is an acquisition solutions firm, based in San Diego, California, specializing in federal acquisition methodologies within the Medical Research and Development, Chemical Biological Defense, and Regulatory Compliance industries. EEI was contracted by NCD to provide Research Acquisition Specialists to assist the Naval Health Research Center (NHRC) by providing onsite and remote contract management support such as: contract proposal preparation, contract award preparation, post-award preparation, contract administration, and contract close out. EEI employees worked in government spaces in Milford

2

and Natick, Massachusetts, Fort Detrick and Silver Springs, Maryland, Stafford, Virginia, Orlando, Florida, and at NHRC San Diego, California. EEI has had a long-standing relationship with Tom BOUCHARD and the NCD. BOUCHARD has awarded more than $20 million in contracts to EEI during his time at NCD.

7.     The Joint Program Executive Office for Chemical and Biological Defense ("JPEO CBD") is a Joint DOD program responsible for the development, acquisition, distribution, and deployment of highly specialized and dynamic joint chemical and biological defense devices, as well as medical diagnostic systems, drugs, and vaccines for the benefit of the Army, Navy, Air Force and Marines. Since at least 2013, JPEO CBD has enlisted the assistance of NCD to award and manage Omnibus Program Engineering and Technical Support ("OPETS") contracts ("the OPETS Contracts") to satisfy all recurring requirements of JPEO CBD's mission. NCD has awarded 69 Indefinite Delivery Indefinite Quantity contracts to 41 vendors with 377 Task Orders valued at about $500,000,000 for JPEO CBD. The OPETS program helps JPEO-CBD to manage and direct the purchase and fielding of drugs, vaccines, countermeasures, information management systems, and force protection systems in support of the military's chemical, biological, radiological and nuclear defenses. JPEO-CBD funded two EEI employees for professional services positions to support NCD with a focus on JPEO-CBD's requirements.

8.     In early 2014, the Director for Industrial Operations, JPEO-CBD, spoke with BOUCHARD concerning his lack of responsiveness to the needs of JPEO-CBD with regard to the OPETS contract. JPEO-CBD agreed to fund an assistant position for BOUCHARD in an effort to increase his responsiveness to the program. BOUCHARD recommended BOYD for the position, informing the Director that he (BOUCHARD) had worked with BOYD in the past.

3

9.      BOYD and BOUCHARD never worked together as BOUCHARD had relayed to the Director of JPEO-CBD.  Instead, BOUCHARD and BOYD met in approximately 2007 when BOYD was working as a bartender at the Courtyard Marriott in Frederick, Maryland. BOUCHARD stayed at the Courtyard Marriott while on frequent travel to Ft. Detrick, and the two became friendly.  BOUCHARD encouraged BOYD to prepare and submit a resume for the assistant position he created through a contract NCD had with at EEI.  Since EEI had an open acquisition support contract with NCD, it was easy for BOYD's position to placed under that contract.

10.     BOUCHARD reviewed and edited BOYD's resume before it was submitted to EEI. BOYD did not apply to a specific job announcement with EEI and no other resumes were considered for this newly created position as BOUCHARD's assistant.  The minimum qualifications for this position required applicants to have government contracting experience and a college degree, BOYD had neither.  BOYD did not have a formal interview with EEI, she spoke with EEI on one occasion to negotiate salary and then received a written offer of employment.

11.     On June 9, 2014, BOYD was hired by EEI as a Acquisition Specialist, based in San Diego, California at a starting salary of $65,000 per year.  BOYD's salary was funded by DOD. BOYD worked at EEI until approximately April 2018.

12.     During her tenure at EEI, BOYD conducted very little in the way of documented work product.  BOYD completed nine (9) online courses in the basics of government contracting offered through the Defense Acquisition University.  Per the contract with EEI, all contract employees were required to submit weekly updates documenting tasks worked on or completed during the week.  In the almost four years of employment under the EEI contract, BOYD

4

submitted approximately nine (9) weekly updates.  The JPEO-CBD Contracting Officer's

Representative (COR) for the OPETS contract (which BOYD was purportedly hired to assist),

was only able to produce 23 emails copied or directly addressed to BOYD between 2014-2016.

The COR did not know BOYD was still employed with EEI as recently as April 2018 and had

not had contact with her in years.

13.     Between June 2014 and April 2018, JPEO CBD paid more than $490,000 to EEI for

BOYD's purported services and expenses.  BOYD received approximately $65,000 per year

from EEI in salary as well as additional funds for reimbursement of work related travel expenses.

EEI was paid a premium for hiring BOYD from NCD and therefore retained the remainder of the

funds not allocated to BOYD's salary or reimbursement for travel and other direct costs

purportedly related to her employment.

14.     BOUCHARD personally approved the payment of more than $490,000 to EEI for

BOYD's purported services.

15.     During her tenure at EEI, BOYD traveled frequently.  Between June 9, 2014 and

September 11, 2017, BOYD submitted at least 42 Travel Expense Reports ("TER") totaling

$62,116.49 to EEI for reimbursement for her travel under the W911QY-13-D-0102 Contract

("D0102 Contract").  EEI would forward her Travel Expense Reports ("TER") with their

invoices to BOUCHARD for reimbursement pursuant to the D0102 Contract.  BOUCHARD

then accepted the invoices and certified that the expenses conformed to the D0102 Contract,

resulting in payments by the Defense Finance and Accounting Service ("DFAS") to EEI totaling

at least $75,783.49.  EEI then reimbursed BOYD for her reported out-of-pocket expenses.

BOYD's claimed expenses were for travel to Stafford, Virgina (4 trips); Orlando, Florida (31

trips); National Harbor, Maryland (2 trips); Huntsville, Alabama (1 trip); Baltimore, Maryland (1

trip); Aberdeen, Maryland (2 trips); and Clearwater Beach, Florida (1 trip). The trips ranged in duration from two (2) days to fifteen (15) days.

16.    The stated purposes of BOYD's travel included "Support Joint Program Executive Office for Chemical and Biological Defense (BOUCHARD)," "Support ACC-APG NCD contracts (BOUCHARD)," "Support Deputy Director [later Director] NCD concerning Orlando operations," "Support Deputy Director NCD by attending PM-SUAV Program reviews, and Industry Day," and "Support Director NCD at AAI, Inc."

17.    For most of these trips, however, BOYD traveled with BOUCHARD and stayed with him in the same hotel room. During the trips, BOYD and BOUCHARD visited Disney parks and spent time at the pool and waterslides at the resort hotel - all during business hours. Additionally, despite thirty-one (31) government funded trips to Orlando, no one from the NCD-Orlando office ever met BOYD or even recognized her name.

18.    In order to conceal the personal nature of the trips, BOUCHARD falsified invoices to create the illusion that BOYD had her own room at each resort hotel when, in fact, she shared a hotel room with BOUCHARD during these trips. In these instances, BOUCHARD was reimbursed for his room that they both stayed in, and BOYD was reimbursed for a room that she never reserved or paid for.

<u>Object and Purpose of the Conspiracy</u>

19.    The object of the conspiracy was to steal government funds by obtaining a DOD-funded job for BOYD at EEI, for which she was unqualified and performed no legitimate function. The purpose was to enable BOUCHARD and BOYD to work and travel together at the expense of the government.

Manner and Means of the Conspiracy

20.     Among the manner and means by which BOUCHARD and BOYD carried out the

conspiracy were the following:

a.      BOUCHARD created a no-show job for girlfriend BOYD, for which she

was not qualified and performed little to no work.

b.      BOUCHARD and BOYD took numerous government-funded trips under

the guise that they were work-related, including 31 trips to Orlando, Florida;

c.      On each government-funded trip, BOYD and BOUCHARD purchased and

were reimbursed for separate hotel rooms when, in fact, they reserved and

stayed in one; and

d.      BOYD and BOUCHARD falsified hotel receipts to make it appear that they

were staying in separate rooms. For example, BOUCHARD, either gave

BOYD a forged copy of the receipt from his hotel room or he created a false

receipt for BOYD to submit for approval. BOUCHARD then approved the

travel vouchers and the costs were reimbursed.

Overt Acts in Furtherance of the Conspiracy

21.     From in or about 2014 through in or about April 2018, BOUCHARD and BOYD

committed and caused to be committed the following overt acts, among others, in furtherance of

the conspiracy:

a.      In May 2014, BOUCHARD emailed an edited copy of BOYD's resume to her to
enhance her application for the ProgramAcquisition Specialist position at EEI.

b.      In May 2014, BOUCHARD sent an email to Phil Borja, of EEI, with BOYD's
edited resume for an open position with EEI.

c.   Between August 10, 2014 and August 16, 2014, BOYD and BOUCHARD took a DOD-funded trip to Orlando, Florida. BOYD claimed her presence on this trip was to support the JPEO CBD and BOUCHARD. For this trip, BOYD submitted a false receipt for a hotel room that she never stayed in at the Shades of Green resort that BOUCHARD later approved.

d.   Between September 14, 2014 and September 20, 2014 BOYD and BOUCHARD took a DOD-funded trip to Florida. For this trip, BOYD submitted a false receipt for a hotel room she never stayed in at the Hilton Hotel that BOUCHARD approved.

e.   Between January 25, 2015 and January 30, 2015 BOYD and BOUCHARD took a DOD-funded trip to Florida. For this trip, defendants BOUCHARD and BOYD altered BOUCHARD's hotel receipt which made it appear that BOYD had her own hotel room when she actually stayed in BOUCHARD's room. BOUCHARD then approved the altered hotel receipt and EEI was reimbursed.

f.   Between April 20, 2015 and April 26, 2015, BOYD and BOUCHARD took a DOD-funded trip to Florida. For this trip, BOYD submitted BOUCHARD's altered hotel receipt which made it seem that BOYD had her own room when she actually stayed in BOUCHARD's room. BOUCHARD then approved the altered hotel receipt and EEI was reimbursed for the non-existent cost.

g.   Between May 23, 2016 and May 28, 2016, BOYD and BOUCHARD took a DOD-funded trip to Florida. For this trip, BOYD submitted BOUCHARD's altered hotel receipt which made it appear that BOYD had her own hotel room when she actually stayed in BOUCHARD's room. BOUCHARD then approved the altered hotel receipt and EEI was reimbursed.

h.   Between July 11, 2016 and July 24, 2016, BOYD and BOUCHARD took a DOD-funded trip to Florida. During this time, BOUCHARD was on annual leave and not working. For this trip, BOYD submitted BOUCHARD's altered hotel receipt which made it appear that BOYD had her own hotel room when she actually stayed in BOUCHARD's room. BOUCHARD then approved the altered hotel receipt and EEI was reimbursed.

i.   Between August 14, 2016 and August 21 of 2016, BOYD and BOUCHARD took a DOD-funded trip to Florida. For this trip, BOYD submitted BOUCHARD'S altered hotel bill for reimbursement which made it seem that Boyd had her own room when she actually stayed in the same room as BOUCHARD. This receipt was approved by BOUCHARD.

8

j.      Between September 14, 2014 and September 20, 2014, BOYD and BOUCHARD took a DOD-funded trip to Florida.  For this trip, BOYD submitted BOUCHARD's altered hotel bill for reimbursement which made it seem that BOYD had her own hotel room when she actually stayed in BOUCHARD's room. This receipt was later approved by BOUCHARD.

k.      Between September 13, 2015 and September 25, 2015, BOYD and BOUCHARD took a DOD-funded trip to Florida.  For this trip, BOYD submitted BOUCHARD's altered hotel bill for reimbursement which made it seem that BOYD had her own hotel room when she actually stayed in BOUCHARD's room. This receipt was later approved by BOUCHARD.

l.      Between May 8, 2017 and May 11, 2017, BOYD and BOUCHARD took a DOD-funded trip to Florida.  For this trip, BOYD submitted BOUCHARD's altered hotel bill for reimbursement which made it seem that BOYD had her own hotel room when she actually stayed in BOUCHARD's room.  This receipt was approved by BOUCHARD.

### Boyd's False Statements to the Grand Jury

22.     On or about May 24, 2018, a United States grand jury in the District of Massachusetts was conducting an investigation of the criminal activities of BOUCHARD as described in paragraphs 1-19 above.

23.     On May 24, 2018, BOYD testified, under oath, before the Grand Jury and made the following declarations in response to questions:

Q:      *Okay. So, you're looking at – and did you spend time outside the hotel as well?*

A:      *I—yes*

Q:      *In terms of—well, how many rooms would you—*

A:      *I, I –*

Q:      *-- reserve?*

A:      ***-- had my own room?***

Q:      *How many rooms would Mr. Bouchard rent?*

A:     ***Two, because I would get a bill from him, and he would stay in his room, but,***

      ***during—***

Q:     *All right*

A:     *--the affair, we—*

Q:     *So, can I ask you something/*

A:     *okay*

Q:     *Is this the complete opposite of what you told the agents?  Do you remember*

      *telling the agents that you would get two rooms, but you only needed one because*

      *you shared a room?*

A:     *During the affair*

Q:     *And how long—but you told the agents—okay—the affair went from—*

A:     ***We still always had two rooms, but –***

Q:     *Okay*

A:     ***—I'd either be in his, or he would be in mine***

Q:     *Okay*

A:     *And even when we weren't having the affair,--*

Q:     *Yeah?*

A:     ***—he would still come into my room, or I would come into his, and we would***

      ***conduct business, or he would be on conference calls, and then, he was always***

      ***on his computer, and always on his cell telephones working.***

Q:     *Do you remember telling the agents that we would rent two rooms, but really only*

      *used one because you shared them?*

A:     *During the affair.*

*Q:      Okay*

*A:      It was short lived. Like a month*

24.      BOYD's statements were false in that BOYD did not reserve or stay in her own hotel

room on any of these DOD-funded trips.

## COUNT ONE
Conspiracy
(18 U.S.C. § 371)

The Grand Jury charges:

25.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-21 of this

Indictment.

26.     From at least in or about 2014 to in or about April 2018, in the District of Massachusetts,

and elsewhere, the defendants,

### THOMAS BOUCHARD and CHANTELLE BOYD

conspired with each other and other persons known and unknown to the grand jury, to commit an

offense against the United States, to wit, theft of government funds, that is to knowingly and

willfully steal and purloin money and things of value of the United States and of any department

and agency thereof, in a total amount greater than $1,000, namely salary and benefits for a DOD-

funded contractor position, in violation of Title 18, United States Code, Section 641.

All in violation of Title 18, United States, Section 371.

## COUNTS TWO - ELEVEN
### (Theft of Government Funds; Aiding and Abetting)
### (18 U.S.C. §§ 641 and 2)

The Grand Jury further charges:

27.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-21 of this

Indictment.

28.     From on or about the dates set forth below, in the District of Massachusetts, and

elsewhere, the defendants,

### THOMAS BOUCHARD and CHANTELLE BOYD

did, on a recurring basis, knowingly and willfully embezzle, steal, purloin and convert to their

own use money of the United States and of any department and agency thereof, in a total amount

greater than $1,000, namely, travel benefits for a DOD-funded contractor position.

| Count | Dates of Trip | Location of Trip | Cost of Trip |
|-------|---------------|------------------|--------------|
| 2 | 3/16/15 to 3/21/15 | Huntsville, AL | 1537.60 |
| 3 | 4/20/15 to 4/26/15 | Orlando, FL | 2015.28 |
| 4 | 7/6/15 to 7/12/15 | Orlando, FL | 1858.49 |
| 5 | 10/29/15 to 11/6/15 | Orlando, FL | 2,755.52 |
| 6 | 4/24/16 to 4/29/16 | Orlando, FL | 1919.21 |
| 7 | 6/13/16-6/25/16 | Orlando, FL | 3345.66 |
| 8 | 7/11/16 – 7/24/16 | Clearwater/ Orlando, FL | 4873.17 |
| 9 | 8/28/16 – 9/11/16 | Orlando, FL | 3376.46 |
| 10 | 1/18/17 to 1/27/17 | Orlando, FL | 2280.86 |
| 11 | 5/8/17  to 5/11/17 | Orlando, FL | 1125.24 |

All in violation of Title 18, United States Code, Section 641.

## COUNT TWELVE
### (False Declarations before the Grand Jury)
### (18 U.S.C. § 1623(a))

The Grand Jury further charges:

29.     The Grand Jury re-alleges and incorporates by reference paragraphs 22-24 of this

Indictment.

30.     On or about May 24, 2018, in the District of Massachusetts, the defendant,

### CHANTELLE BOYD

while under oath in a proceeding before grand jury of the United States, knowingly made false

material declarations as set forth in paragraphs 23 and 24 of this Indictment:

All in violation of Title 18, United States Code, Section 1623.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

1.      Upon conviction of the offenses in violation of Title 18, United States Code, Section 371, set forth in Count 1 and Title 18, United States Code, Section 641, set forth in counts 2-11[of this Indictment the defendants,

### THOMAS BOUCHARD AND CHANTELLE BOYD,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

EVAN GOTLOB
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: MARCH _12_, 2020
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK

3-12-20

11:10 am

16